UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JENNIFER LEONARD, ) | |
| ) | Case No. 2:19-CV-2142 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE SARAH D. MORRISON |
| ) | |
| JOHN DOE CORP. d/b/a ) | MAGISTRATE KIMBERLY A. JOLSON |
| "GOLDSTEIN & WEISS," JAMES ) | |
| DORMAN, and DORMAN ) | |
| INCORPORATED, ) | |
| ) | |
| Defendants. ) | |

## OPINION & ORDER

On May 23, 2019, Plaintiff Jennifer Leonard filed a Complaint against Defendant John Doe Corp. d/b/a Goldstein & Weiss alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Ohio Consumer Sales Practices Act ("CSPA"), R.C. § 1345.09 *et seq.*, as well as a claim for invasion of privacy. (ECF No. 1.) Her November 25, 2019 First Amended Complaint added James Dorman and Dorman Incorporated as Defendants and included an additional claim for conspiracy liability. (ECF No. 9.)

The Clerk entered default against Mr. Dorman on February 19, 2020 under Fed. R. Civ. P. 55(a). (ECF No. 16.) Pursuant to Ms. Leonard's request, the Court dismissed Defendants John Doe Corp. d/b/a Goldstein & Weiss and Dorman Incorporated on May 15, 2020. (ECF No. 20.) Her instant Motion for Default Judgment against Mr. Dorman followed and is unopposed. (ECF No. 21.)

1

I.      FINDINGS OF FACT

Because default was entered against Defendant Dorman, "well-pleaded allegations in the plaintiff's complaint, except those pertaining to the amount of damages, are taken as true." *United States v. Seventy-Nine Thousand, One Hundred Ten Dollars ($79,110.00) in United States Currency*, No. 1:14-cv-274, 2017 U.S. Dist. LEXIS 43395, at *7 (S.D. Ohio Mar. 24, 2017) (internal quotation marks and citation omitted).

According to the First Amended Complaint, Mr. Dorman participated in a conspiracy with an entity known as "Goldstein & Weiss" to create a fake law firm website for the purpose of intimidating consumers into making credit card and debit card payments over the phone.  (ECF No. 9 at ¶ 12.)  In furtherance of this conspiracy, he registered the domain name "goldsteinandweiss.com" with the Internet Corporation for Assigned Names and Numbers through a business known as Domains By Proxy, LLC.  *Id.* at ¶ 8.

Mr. Dorman agreed to work with the debt collectors of "Goldstein and Weiss" in exchange for monetary compensation, and he knowingly agreed to violate the FDCPA.  *Id.* at ¶¶ 14 & 16. Mr. Dorman continues to work with "Goldstein and Weiss" by protecting the identities of the others involved in this scheme.  *Id.* at ¶ 15. For instance, he used an internet proxy service in an attempt to shield himself and others from being publicly exposed as the creators of "goldsteinandweiss.com," a website purporting to be that of a nonexistent law firm.  *Id*. at ¶ 11.

Ms. Leonard incurred and defaulted on a debt for personal purposes with Citibank many years ago.  *Id.* at ¶ 17.  "Goldstein & Weiss," in the course of attempting to collect upon this debt, called her and proceeded to repeatedly insult her and to make numerous derogatory remarks about her disabled child.  *Id*. at ¶ 18; ECF No. 21-1 at ¶ 2. An employee of Goldstein & Weiss or Dorman Incorporated told Ms. Leonard that she "had money associated with the last

2

four of her social," and therefore should be able to make payments. (ECF No. 9 at ¶ 19.) Ms. Leonard told the caller that the money was a Social Security Disability deposit for her disabled child. *Id.*

Another caller from "Goldstein & Weiss" berated her for still having debt despite being in her forties. *Id*. at ¶ 20. Ms. Leonard explained her difficult personal circumstances but the caller continued to engage in name-calling and other shaming tactics. *Id*.  For instance, the caller demanded to know how her son was receiving Social Security payments, sarcastically asking if her disabled son was 65 years old. *Id*. at ¶ 21.  The caller demanded $4,000, but she explained that she could not pay this sum up front. *Id*. at ¶ 22.  She requested a payment plan but Defendants rejected her offer. *Id*.  She informed the caller that she was out of work; was a full-time caretaker for her child; and was currently caring for her husband, who had been recently diagnosed with terminal colon cancer. *Id*. at ¶ 23. The caller then claimed that she was from the "law firm" of "G & W" and pointed Ms. Leonard to the website created by Mr. Dorman, https://goldsteinandweiss.com/. *Id*. at ¶ 24.  The employee then threatened to sue Ms. Leonard and to garnish her disabled child's Social Security payments. *Id*. at ¶ 25. Ms. Leonard hung up the phone and cried for several hours. *Id.*

After investigation, Plaintiff's counsel learned that "Goldstein & Weiss" was not a real law firm, even though the website created by Mr. Dorman stated that "G & W" is a "boutique law firm." *Id*. at ¶ 26.  Plaintiff's counsel attempted to call and e-mail the "firm." *Id*. at ¶ 27. However, neither Ms. Leonard nor her attorneys were able to discover the true name or location of G & W. *Id*.  She has suffered harm as a result of Defendants' actions, including but not limited to invasion of privacy, humiliation and emotional distress. *Id*. at ¶ 28. Specifically, her declaration states that she began suffering from extreme stress, depression, anxiety and

3

sleeplessness as a result of the calls. (ECF No. 21-1.) She sought medical and psychiatric help for those ailments. *Id*.

## II. CONCLUSIONS OF LAW

Where, as here, default renders the well-pleaded allegations of a complaint true, a court must still assess whether the factual allegations are legally sufficient to state the alleged cause of action. *Seventy-Nine Thousand, One Hundred Ten Dollars ($79,110.00) in United States Currency*, 2017 U.S. Dist. LEXIS 43395, at *7 (citation omitted.)

"In order to establish a claim under the FDCPA, the following elements must be present: (1) plaintiff is a 'consumer' as defined by the FDCPA; (2) the 'debt' must arise out of transactions that are 'primarily for personal, family or household purposes'; (3) defendant is a 'debt collector' as defined by the FDCPA; and (4) defendant must have violated one of the specific statutory prohibitions regarding debt collection communication and/or activity." *Wallace v. Manley Deas Kochalski, LLC*, No. 3:13-CV-00031-H, 2013 U.S. Dist. LEXIS 92956, at *6 (W.D. Ky. July 1, 2013). The Amended Complaint sufficiently alleges the presence of each of these elements. (ECF No. 9.)

Ms. Leonard has further alleged that Mr. Dorman engaged in a conspiracy to violate the FDCPA, and federal courts in this state typically recognize conspiracy as a valid theory of FDCPA liability. *See*, *e.g.*, *Richey v. CitiMortgage, Inc.*, No. 1:13-CV-01452, 2013 U.S. Dist. LEXIS 160148, at *25 (N.D. Ohio Nov. 8, 2013) ("Because Plaintiffs state a claim upon which relief can be granted under the FDCPA and []CSPA, as explained above, there is an underlying wrong to support a civil conspiracy claim."). The First Amended Complaint adequately asserts

4

that Mr. Dorman, through the conspiracy, violated § 1692d[1] by repeatedly insulting Ms. Leonard and her disabled child. This is a serious violation designed to scare, intimidate and harass Ms. Leonard and her family. Second, Mr. Dorman, through the conspiracy and through his own actions in creating a fake law firm website, violated § 1692e(3)[2] by representing that "G & W" was a law firm comprised of attorneys. He, through the conspiracy, falsely threatened Ms. Leonard with legal action in violation of § 1692e(5)[3] and falsely threatened to garnish her Social Security payments in violation of § 1692e(4)[4]. The Court finds that the noncompliance is intentional.

Ms. Leonard first seeks $1,000 in statutory damages under the FDCPA. 15 U.S.C. § 1692(k)(a)(2)(A). Given Mr. Dorman's disregard for the FDCPA, the full $1,000 is justified here. *See, e.g.*, *Harding v. Check Processing, LLC*, No. 5:10CV2359, 2011 U.S. Dist. LEXIS 29185, at *7 (N.D. Ohio Mar. 22, 2011) (awarding the full $1,000).

In addition to statutory damages, Ms. Leonard seeks $5,000 in actual noneconomic damages under the FDCPA. "While the FDCPA does not define 'actual damages,' it is commonly accepted that a prevailing plaintiff may recover for emotional distress damages." *Harding v. Check Processing, LLC*, No. 5:10CV2359, 2011 U.S. Dist. LEXIS 29185, at *5 (N.D. Ohio Mar. 22, 2011). "Although a plaintiff may rely on his own testimony to establish such

---

[1] This section prohibits debt collectors from engaging in "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."

[2] This section prohibits debt collectors from falsely representing or implying that any individual is an attorney or that any communication is from an attorney.

[3] This section prohibits debt collectors from threatening to take any action that cannot legally be taken or that is not intended to be taken.

[4] This section prohibits debt collectors from representing or implying that nonpayment of any debt will result in the seizure, garnishment or attachment of any property or wages of any person unless such action is lawful and the debt collector intends to take such action.

damages, 'he must explain the circumstances of his injury in reasonable detail,' and may not 'rely on conclusory statements' unless the 'facts underlying the case are so inherently degrading that it would be reasonable to infer that a person would suffer emotional distress from the defendant's action.'" *Davis v. Creditors Interchange Receivable Mgmt., LLC*, 585 F. Supp. 2d 968, 976 (N.D. Ohio 2008) (quoting *Wantz v. Experian Information Solutions*, 386 F.3d 829, 834 (7th Cir. 2004)).

Where the record contains limited evidence indicating that something "at least in some small degree 'inherently degrading' to the plaintiff" occurred, damages of $5,000 "sufficiently compensate plaintiff for the emotional distress she suffered." *Harding*, 2011 U.S. Dist. LEXIS 29185, at *6; *see also Kajbos v. Maximum Recover Sols., Inc*., No. CV 09-1206-PHX-MHM, 2010 U.S. Dist. LEXIS 142690, at *11–12 (D. Ariz. May 17, 2010) (awarding $5,000 for emotional distress under the FDCPA despite a "relatively conclusory" declaration by plaintiff).

Here, Mr. Dorman's conduct was "inherently degrading" toward Ms. Leonard. He, through the conspiracy, falsely threatened legal action, verbally berated her, and impersonated an attorney planning to garnish her Social Security payments. These are exactly the type of false and misleading statements that Congress has indicated is injurious to consumers. *See* 15 U.S.C. § 1692e(3) (prohibiting the false representation that a debt collector is an attorney). The Court, having reviewed Ms. Leonard's declaration, is satisfied that $5,000 in actual damages is merited in this case. (ECF No. 21-1.)

Under 15 U.S.C. § 1692k(a)(3), Ms. Leonard is entitled to an award of costs and attorney fees. The Court **GRANTS** her request for $400 in costs for the filing fee. She further seeks $9,670.16 in attorney fees. Based on counsel's declaration (ECF No. 21-2), the Court finds that the rates requested are reasonable, specifically $270 per hour for the work of attorney Jonathan

Hilton; $200 per hour for the work of newly admitted attorneys Taylor Hutta and Matthew Stewart; $130 per hour for the work of summer associate Alexander Harvey; and $130 per hour for the work on paralegal David Stalk. *See Fuller v. Lakeshore Fin. LLC,* No. 2:18-cv-1722, 2019 U.S. Dist. LEXIS 194808, at *4–5 (S.D. Ohio Nov. 8, 2019) (finding $270 per hour for Mr. Hilton to be a reasonable fee); *Jablonski v. Portfolio Recovery Assocs.*, No. 3:11CV02291, 2012 U.S. Dist. LEXIS 59734, at *8 (N.D. Ohio Apr. 30, 2012) (awarding $200 per hour for less experienced attorneys). The Court **GRANTS** Ms. Leonard's request for $9,670.16 in attorney fees.

The conspiracy's actions in (1) impersonating attorneys and (2) making false legal threats each support independent awards of statutory damages under the CSPA. *Gilden v. Platinum Holdings Grp., LLC*, No. 1:18-cv-343, 2019 U.S. Dist. LEXIS 23458, at *7 (S.D. Ohio Feb. 13, 2019) (impersonating an attorney and falsely threatening legal action each support a CSPA claim). Statutory damages under the CSPA are set at $200 per violation. Ms. Leonard is thus entitled to $200 for Defendants' false legal threat and an additional $200 for impersonation of an attorney, resulting in total damages of $400 under the CSPA.

### III. CONCLUSION

The Court **GRANTS** Plaintiff's Motion for Default against Defendant James Dorman under Rule 55(b)(2). (ECF No. 21.) The Court awards Plaintiff statutory damages, noneconomic actual damages, attorney fees, and costs in the amount of $16,470.16[5], which is comprised of: (1) $1,000 in statutory damages under the FDCPA; (2) $5,000 in actual damages under the FDCPA; (3) $400 in statutory damages under the CSPA; and (4) $9,670.16 in attorney fees and $400 in

---

[5] This is the correct sum of the figures being sought. The $16,070.16 requested in the motion is incorrect.

7

court costs for the filing fee under 15 U.S.C. § 1692k(a)(3).

Pursuant to Plaintiff's request, her remaining causes of action are hereby dismissed without prejudice under Rule 41(a)(2).

**IT IS SO ORDERED**.

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**